## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

ALEXANDER HOWELL,                   )
                                    )
            Plaintiff,              )
                                    )
    v.                              )          No. 4:22-CV-218 PLC
                                    )
JIMMY KENNON, et al.,               )
                                    )
            Defendants.             )

## OPINION,  MEMORANDUM AND ORDER

This matter is before the Court upon review of plaintiff Alexander Howell's complaint and four supplements to her complaint.[1] Also before the Court is plaintiff's motion for leave to commence this action without payment of the required filing fee.

Plaintiff, an inmate at Algoa Correctional Center brings this action asserting multiple claims for relief against six defendants located at Eastern Reception and Diagnostic Correctional Center. For the reasons stated below, the Court finds that plaintiff does not have sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $1.00. *See* 28 U.S.C. § 1915(b)(1). Furthermore, after reviewing the complaint and the six (6) supplements to the complaint, the Court will order plaintiff to amend her complaint within twenty-one (21) days of the date of this Memorandum and Order. Plaintiff's motions for appointment of counsel will be denied at this time.

## 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her

---

[1]Plaintiff Alexander Howell is a transgender inmate and goes by the pronouns she/her.

prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff has not submitted a *certified* prison account statement. As a result, the Court will require plaintiff to pay an initial partial filing fee of $1.00. *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997) (when a prisoner is unable to provide the Court with a certified copy of her prison account statement, the Court should assess an amount "that is reasonable, based on whatever information the court has about the prisoner's finances."). If plaintiff is unable to pay the initial partial filing fee, she must submit a *certified* copy of her prison account statement in support of her claim.

### The Complaint

Plaintiff, Alexander Howell, an inmate at Algoa Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 alleging violations of her civil rights. She names the following individuals, from Eastern Reception Diagnostic and Correctional Center (ERDCC) as defendants in this action:  Jimmy Kennon (Correctional Officer); Lloyd Russell (Correctional Officer); Heather Coefer (Warden); Dennis Coleman (Correctional Officer); Unknown Reed (Bedbroker); Joshua Lee (Correctional Officer); and Unknown Boyer (Functional Unit Manager).  Plaintiff sues defendants in their individual and official capacities.

2

Plaintiff, a transgendered inmate, alleges that she was sexually assaulted during her incarceration at ERDCC in December of 2021 by another inmate. She claims that after she was assaulted, defendant Coleman failed to respond to her attempts to reach out to officers by pressing the emergency button in her cell. When plaintiff was unable to articulate what had occurred to her, Officer Coleman alleged threatened to place her "in the hole for fucking with him." Plaintiff claims to have finally been able to speak about the assault to her caseworker the morning after, and at that time, she was moved into protective custody.[2] Plaintiff claims that defendants Jimmy Kennon, Joshua Lee, Heather Coefer and Unknown Reed should have "prevent[ed], detect[ed], respond[ed] to the sexual assault or rape." Additionally, she claims that defendants failed to properly train or supervise their employees relative to this situation. However, she fails to articulate how these defendants were involved in this situation.

Plaintiff alleges that after she was released from protective custody, at some unnamed time, she was placed in a cell with an inmate who "had a sodomy charge." Plaintiff identifies the inmate as Unknown Jinan. She apparently blames defendant Coefer, the Warden at ERDCC, as well as defendant Reed, the Bedbroker, for placing her in this cell. However, she has not articulated why these two defendants are causally connected to this allegation. Plaintiff asserts that if the Transgender Housing Policy was used, she never would have been placed with this inmate and put into imminent danger. She claims that her "butt" was cupped by inmate Jinan, but plaintiff does not indicate that she told anyone what occurred to her. She does not allege that any other negative behaviors from inmate Jinan occurred while plaintiff was celled with Jinan.

 Next plaintiff asserts that defendant Lloyd Russell made "verbal sexual harassment statements" relative to her gender on or about January 17, 2022. She claims that defendant Russell

---

[2]Plaintiff claims that the unnamed caseworker moved him but failed to follow Missouri Department of Corrections Policies relating to Transgender Resident Housing.

3

called her a "boy" repetitively during an argument and threatened to place her in the hole after she told an unidentified Lieutenant about the comments. After plaintiff told on defendant Russell, she was allegedly retaliated against and placed in segregation. However, plaintiff does not indicate why she was placed in segregation or when her alleged placement occurred. Plaintiff also fails to indicate whether defendant Russell was disciplined for his actions.

Plaintiff also fails to allege if "the hole" she was placed in by defendant Russell was disciplinary custody or protective custody. Plaintiff appears to blame defendant Jimmy Kennon for failing to prevent "staff on inmate sexual harassment." However, he fails to articulate how or why defendant Kennon was involved in this situation.

Plaintiff claims that "upon [her] entrances [into] administrative PC and PC, both sergeants placed [her] into unconditionally filthy cells for an excessive amount of time without being able to clean for 3 days." Plaintiff claims that she is referring to acts done by Joshua Lee and Jimmy Kennon. Plaintiff does not indicate what was allegedly filthy about the cells in protective custody or in disciplinary custody. She merely states that there was writing on the walls. Plaintiff, however, acknowledges that she was provided cleaning supplies and allowed to clean the cells in PC at some point, but she was only provided six minutes to clean. Plaintiff does not indicate who provided her the cleaning supplies.

Plaintiff fails to set forth how long she resided in administrative custody or the specific differences in custody levels from the general population. Plaintiff also fails to set forth how often inmates in the different types of custody levels were allowed to shower, when/how often inmates in the different custody levels were able to utilize the phone and canteen, what types of clothing were assigned to inmates in the different levels of custody and what the cell/inmate situations were for the different custody levels.

Plaintiff claims that on or about January 2, 2022, around 10 p.m., she notified Correctional Officer Lee that her toilet was flooding in her cell and the water from the toilet was going under her bed. At around 11 p.m., plaintiff states that she was told by an unnamed person that a work order had been placed relative to her issue, but she would not be moved from her cell. Plaintiff claims that her toilet was inoperable for five (5) days.[3] Plaintiff does not explain who was ultimately responsible for the alleged poor conditions of confinement in her cell.

Last, plaintiff complains that her Functional Unit Manager, defendant Boyer, refuses to let her have a cellmate, which she believes to be gender discrimination. However, Boyer, as well as defendant Kennon, both informed plaintiff that she was being denied a cellmate for "safety reasons." Plaintiff states that on January 27, 2022, defendant Kennon told her that she had been denied a cellmate as a result of Boyer's decision. On another unidentified date, defendant Lee told her "no, because I said so." On yet another unidentified date, plaintiff states that caseworker Kennon and social worker Baker were told, when they attempted to advocate for plaintiff getting a cellmate, that she was unable to have a cellmate due to "safety and security." Plaintiff does not indicate whom Baker and Kennon spoke to at that juncture. Plaintiff also fails to explain why she believes her failure to be assigned a cellmate was gender discrimination.

Plaintiff seeks compensatory and punitive damages in this action.

### Supplements to the Complaint

On March 21, 2022, plaintiff filed, as a supplement to her complaint, three (3) affidavits written by her fellow inmate, Monteis Floover. Floover's first affidavit detailed the alleged cleanliness of the dining room at ERDCC, and his second affidavit discussed his time in

---

[3]It is unclear in the complaint how long exactly plaintiff is claiming he lived in a cell with feces on the floor. Her dates appear to jump from January of 2022 back to February of 2021.

administrative segregation at ERDCC. Mr. Floover's last affidavit contained his opinion of the correctional officers at ERDCC.[4] [ECF No. 6].

Also on March 21, 2022, plaintiff filed a second supplement to her complaint. She included sixty-five (65) pages of exhibits of the Department of Corrections' "policies needed in the case." The packet included a copy of "IS5-3.3 Transgender and Intersex Offenders" policy, as well as a copy of "IS5-3.1 Offender Housing Assignments." Also included in the packet provided to the Court was a Missouri Department of Corrections Offender's Guide on "Sexual Misconduct/Abuse," a policy detailing "Administrative Segregation" at MDOC and a policy outlining "Disciplinary Segregation" at MDOC. [ECF No. 7].

On March 21, 2022, plaintiff filed a third supplement to her complaint. She filed "exhibits pertaining to the sexual assault/rape, informal grievances and grievances." [ECF No. 8].

On March 24, 2022, plaintiff filed a fourth supplement to her complaint. She filed an affidavit from another inmate at ERDCC, Brandon Kehoe, who wishes to express his opinions on "the hole" at ERDCC. [ECF No. 10]

On March 31, 2022, plaintiff filed a fifth supplement to her complaint. In a thirty-one (31) page handwritten document, titled "Sexual Assault & Conditions of Confinement Arguments," plaintiff articulated new claims which she wished to be added to this action. [ECF No. 14]. Plaintiff's allegations are not contained on a court-provided complaint form, nor do they match the prior claims, in their entirety, in her original complaint. It is difficult to discern whether plaintiff wishes this document to replace her prior complaint or if she wishes this document to supplement her prior pleading. The Court will discuss this issue below.

---

[4]The Court does not accept discovery. Thus, plaintiff should not file affidavits from other inmates with the Court. If plaintiff attempts to do so at a later date, these documents will be stricken from the Court record.

**Discussion**

As set forth above, plaintiff has filed an original complaint and six (6) supplements to her original complaint. However, pursuant to Federal Rule of Civil Procedure 7(a), a supplemental filing is not a recognized pleading before the Court. In other words, a plaintiff cannot amend or supplement a previously filed complaint by filing separate documents containing changes she wants made to certain parts. Instead, a plaintiff must file a single comprehensive amended complaint, on a court-provided form, setting forth all of the claims she wishes to bring in one document. *See Popoalii v. Correctional Medical Services*, 512 F.3d 488, 497 (8th Cir. 2008). To that end, the Court will instruct plaintiff on the filing of her amended complaint.

Plaintiff is advised that the filing of an amended complaint **completely replaces** the original complaint and all supplements, and so it must include all claims plaintiff wishes to bring. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005) ("It is well-established that an amended complaint supersedes an original complaint and renders the original complaint without legal effect"). Any claims from the original complaint or any supplements that are not included in the amended complaint will be deemed abandoned and will not be considered. *Id*. Plaintiff must **type or neatly print** the amended complaint on the Court-provided prisoner civil rights complaint form, and the amended complaint must comply with the Federal Rules of Civil Procedure. *See* E.D. Mo. L.R. 2.06(A).

The Federal Rules of Civil Procedure require litigants to formulate their pleadings in an organized and comprehensible manner. Even self-represented litigants are obligated to abide by the Federal Rules of Civil Procedure and to plead specific facts as to each named defendant. *See U.S. v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994). Plaintiff is required to set out her alleged claims in a simple, concise, and direct manner, and also the facts supporting her claims as to each named

defendant. *See* Fed. R. Civ. P. 8(a)(2) (complaint should contain short and plain statement of claims); 8(d)(1) (each claim shall be simple, concise, and direct); 10(b) (parties are to separate their claims within their pleadings and the contents of which shall be limited as far as practicable to a single set of circumstances). Plaintiff should fill out the complaint form in its entirety.

In the "Caption" section of the complaint form, plaintiff must state the first and last name, to the extent she knows it, of the defendant or defendants she wants to sue. *See* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties"). If there is not enough room in the caption, plaintiff may add additional sheets of paper. However, all the defendants must be clearly listed. Plaintiff should also indicate whether she intends to sue each defendant in his or her individual capacity, official capacity, or both. Plaintiff should avoid naming anyone as a defendant unless that person is directly related to her claim(s).

In the "Statement of Claim" section, plaintiff should begin by writing a defendant's name. In separate, numbered paragraphs under that name, plaintiff should write the specific facts supporting her claim or claims against that defendant.  If plaintiff is suing more than one defendant, she should proceed in the same manner with each one, separately writing each individual defendant's name and, under that name, in numbered paragraphs, the factual allegations supporting her claim or claims against that defendant. Plaintiff should only include claims that arise out of the same transaction or occurrence, or simply put, claims that are related to each other. *See* Fed. R. Civ. P. 20(a)(2). Alternatively, plaintiff may choose a single defendant, and set forth as many claims as she has against him or her.  *See* Fed. R. Civ. P. 18(a). Plaintiff's failure to make specific factual allegations against any defendant will result in that defendant's dismissal. Furthermore, the Court emphasizes that the "Statement of Claim" requires more than "labels and conclusions or a

formulaic recitation of the elements of a cause of action." *See Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017).

If plaintiff is suing a defendant in an individual capacity, she is required to allege facts demonstrating the personal responsibility of the defendant for harming him. *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (stating that § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights"). It is not enough for plaintiff to refer to a group of defendants and make general allegations against them. Instead, plaintiff must explain the role of each defendant so that each defendant will have notice of what he or she is accused of doing or failing to do. *See Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (stating that the essential function of a complaint "is to give the opposing party fair notice of the nature and basis or grounds for a claim.").

If plaintiff fails to file an amended complaint on a Court-provided form within twenty-one (21) days in accordance with the instructions set forth herein, the Court may dismiss this action without prejudice and without further notice to plaintiff.

### Motions for Appointment of Counsel

Before the Court are three motions filed by plaintiff for appointment of counsel. After considering the motions and the pleadings, the motions will be denied without prejudice.

There is no constitutional or statutory right to appointed counsel in civil cases. *Nelson v. Redfield Lithograph Printing*, 728 F.2d 1003, 1004 (8th Cir. 1984). In determining whether to appoint counsel, the Court considers several factors, including (1) whether the plaintiff has presented non-frivolous allegations supporting his or her prayer for relief; (2) whether the plaintiff will substantially benefit from the appointment of counsel; (3) whether there is a need to further investigate and present the facts related to the plaintiff's allegations; and (4) whether the factual

and legal issues presented by the action are complex. *See Johnson v. Williams*, 788 F.2d 1319, 1322-23 (8th Cir. 1986); *Nelson*, 728 F.2d at 1005.

Although plaintiff's assertions regarding sexual assault by another inmate are egregious, she has demonstrated, at this point, that she can adequately present her claims to the Court. Additionally, neither the factual nor the legal issues in this case are complex. Thus, plaintiff's motions for appointment of counsel will be denied at this time.

Accordingly,

**IT IS HEREBY ORDERED** that, plaintiff's motion to proceed in forma pauperis [ECF No. 2] is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial filing fee of $1.00 within twenty-one (21) days of the date of this Order. Plaintiff is instructed to make her remittance payable to "Clerk, United States District Court," and to include upon it: (1) her name; (2) her prison registration number; (3) the case number; and (4) the statement that the remittance is for an original within **twenty-one (21) days** of the date of this Order, plaintiff shall file an amended complaint on the Court-provided form and in compliance with the Court's instructions.

**IT IS FURTHER ORDERED** that, plaintiff shall submit an amended complaint, in accordance with the instructions set forth in this Memorandum and Order, no later than twenty-one (21) days from the date of this Memorandum and Order.

**IT IS FURTHER ORDERED** that the Clerk of Court shall mail to plaintiff a blank form for the filing of a prisoner civil rights complaint.  Plaintiff may request additional forms from the Clerk, as needed.

**IT IS FURTHER ORDERED** that plaintiff's motions for appointment of counsel [ECF Nos. 4, 11 and 12] are **DENIED at this time**.

**IT IS FURTHER ORDERED** that plaintiff's failure to timely comply with this Order shall result in the dismissal of this action, without prejudice and without further notice.

Dated this  4th day of May, 2022.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE