**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ALEXANDER HOWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:22-CV-218 PLC |
| | ) | |
| JIMMY KENNON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court upon review of plaintiff Alexander Howell's second amended complaint.[1] [ECF No. 23]. Also before the Court is plaintiff's second motion for leave to commence this action without payment of the required filing fee, as well as her fourth motion for appointment of counsel. [ECF Nos. 24 and 25]. Because plaintiff has already been granted leave to proceed in forma pauperis, her second request for leave to proceed in forma pauperis will be denied as moot. Her fourth request for counsel will be denied at this time. After review of the second amended complaint the Court will require plaintiff to submit a third amended complaint within twenty-one (21) days of the date of this Memorandum and Order. Plaintiff's failure to comply with the Court's Order in all relevant areas will result in a dismissal of this action, without prejudice.

**Procedural Background**

Plaintiff, Alexander Howell, a transgendered inmate at Potosi Correctional Center, filed the instant civil rights action pursuant to 42 U.S.C. § 1983 on February 22, 2022. [ECF No. 1]. In her original complaint, plaintiff complained that she had been sexually assaulted at Eastern

---

[1]Plaintiff is a transgendered inmate and goes by the pronouns she/her.

Reception Diagnostic and Correctional Center (ERDCC) in December of 2021 by another inmate. Because plaintiff's allegations were contained throughout both her complaint and multiple supplements, on May 4, 2022, the Court ordered plaintiff to amend her pleading in one comprehensive amended complaint. [ECF No. 18]. Plaintiff was specifically informed that the Court would not accept supplemental pleadings, as such pleadings are not accepted under the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P.7(a). Plaintiff was also told that the Court would strike all affidavits provided by plaintiff from other inmates if attached to her amended pleading. [ECF No. 18, p.6, FN.4].

On May 27, 2022, plaintiff submitted an amended complaint to the Court. [ECF No. 19]. Before the Court could review plaintiff's pleading for frivolousness, maliciousness or for failure to state a claim upon which relief could be granted, pursuant to 28 U.S.C. § 1915, plaintiff submitted her second amended complaint on December 8, 2022. [ECF No. 23].

### Standard of Review

This Court is required to review a complaint filed in forma pauperis and must dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S at 556). Although a plaintiff need not

2

allege facts in painstaking detail, the facts alleged "must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must assume the veracity of well-pleaded facts but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly,* 550 U.S. at 555).

This Court liberally construes complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Liberal construction" means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even pro se complaints must allege facts that, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States,* 508 U.S. 106, 113 (1993).

### The Second Amended Complaint

In her second amended complaint, filed on December 8, 2022, plaintiff alleges a multitude of violations of her civil rights occurring at three separate Missouri Department of Corrections (MDOC) institutions. Such pleading practices are in violation of Federal Rules of Civil Procedure 18 and 20. As a result, plaintiff will be required to amend her complaint on a court-form within

twenty-one (21) days of the date of this Memorandum and Order.

### A. Plaintiff Has Brought a Multitude of Allegations from Three Separate MDOC Institutions

In a one-hundred-six-page (106) second amended complaint, plaintiff sues at total of forty-four (44) defendants in twenty-one (21) separate counts for relief.[2] She sues nine (9) individuals at Eastern Reception Diagnostic and Correctional Center (ERDCC) in Bonne Terre, Missouri.[3] She sues eleven (11) individuals at Algoa Correctional Center (ACC) in Jefferson City, Missouri.[4] Additionally, plaintiff sues twenty-one (21) individuals at Potosi Correctional Center (PCC) in Mineral Point, Missouri.[5] Last, plaintiff sues three (3) individuals from the home office of the

---

[2]Plaintiff asserts at least thirteen (13) counts of purported violations of the MDOC policies and regulations, as well as a one count each of failure to train, failure to protect, violation of her due process rights in violation of the Fourteenth Amendment and excessive force in violation of the Eighth Amendment. Plaintiff also asserts that she was subjected to cruel and unusual punishment in violation of the Eighth Amendment and that defendants engaged in a conspiracy to violate her rights while subjecting her to intentional infliction of emotional distress. Last, plaintiff claims she was subjected to sexual harassment and sex discrimination in violation of her rights.

[3]Plaintiff sues the following individuals at ERDCC:  Jimmy Kennon (Correctional Officer); Lloyd Russell (Correctional Officer); Heather Coefer (Warden); Unknown Reed (Bedbroker); Tim Freeman (Superintendent); Dennis Coleman (Correctional Officer); Jerry Bingham (Warden); Joshua Lee (Correctional Officer); and Unknown Euding (Correctional Officer). Plaintiff sues defendants at ERDCC in their individual and official capacities except for Unknown Reed, Heather Coefer and Unknown Euding. Unknown Reed and Heather Coefer are sued in their official capacities only. Unknown Euding is sued in his individual capacity only.

[4]Plaintiff sues the following individuals at ACC: Unknown Schofield (Correctional Officer); Unknown Snell (Correctional Officer); Unknown Shelton (Correctional Officer); Unknown Dean (Correctional Officer); Unknown Stock (Correctional Officer); Unknown Tarrant (Correctional Officer); Unknown Hollingsworth (Correctional Officer); Unknown Adrian (Correctional Officer); Unknown Purvis (Correctional Officer); Kelly Morris (Warden); and Rebecca Pierson (Correctional Officer). Plaintiff sues the defendants at ACC in their individual and official capacities except for Unknown Schofield, Unknown Shelton, Unknown Stock and Rebecca Pierson. These defendants are sued in their official capacities only.

[5]Plaintiff sues the following individuals at PCC: Unknown Philly (Correctional Officer); Brian Davis (Functional Unit Manager/Bed Broker); Kevin Eckhoff (Correctional Officer); Daniel Adams (Correctional Officer); Samantha Kelley (Correctional Officer); Nathan Warbl (Correctional Officer); Unknown Arnold (Correctional Officer); Unknown Miller (Correctional Officer); Unknown Rulo (Correctional Officer); Unknown Gelastyk (Correctional Officer); Hayden Dean (Correctional Officer); Unknown Carver (Correctional Officer); Unknown Brown (Correctional Officer (Male)); Unknown Brown (Correctional Officer (Female)); Unknown Zandlo (Correctional Officer); Unknown Goudy (Correctional Officer);

Missouri Department of Corrections (MDOC), as well as Governor Michael Parsons.[6]

### 1. ERDCC Claims for Relief

Plaintiff, a transgendered inmate, alleges that she was sexually assaulted during her incarceration at ERDCC in December of 2021 by another inmate. [ECF No. 23, p. 31]. She claims that after she was assaulted, defendant Dennis Coleman, the Control Officer, failed to respond to her attempts to reach out to officers by pressing the emergency button in her cell. When Officer Jimmy Kennon came by her cell almost an hour after the assault and asked why she kept pressing the emergency button, he asked, "PC?[7] Plaintiff purportedly answered, "No, it's personal." She claims she was too scared to tell defendant Kennon about the assault, due to "fear for [her] safety." Kennon allegedly stated, "well," and walked away. *Id.*

When plaintiff attempted to file a PREA[8] complaint with defendant Dennis Coleman at the control center, approximately fifteen minutes after her conversation with Officer Kennon, she claims Officer Coleman was not receptive to her claims. She asserts that she first told Coleman she needed assistance because she was "raped." *Id.* at 32-33. Coleman allegedly told plaintiff he was busy and disregarded plaintiff. Plaintiff went to the dayroom to try to contact another officer,

---

Joshua Smith (Correctional Officer); Unknown Rice  (Correctional Officer); Unknown Price (Correctional Officer); Unknown Vandergriff (Warden) and Unknown Fox (Correctional Officer). Plaintiff sues the defendants at PCC in their individual and official capacities except for Unknown Philly, Unknown Miller, Unknown Rulo, Unknown Gelastyk, Hayden Dean, Unknown Carver, Unknown Goudy, Unknown Rice, Unknown Vandergriff and Unknown Fox. Unknown Philly, Unknown Miller, Unknown Rulo, Hayden Dean, Unknown Goudy, Unknown Rice, Unknown Vandergriff and Unknown Fox are sued in their official capacities only. Unknown Gelastyk and Unknown Carver are sued in their individual capacities only.

[6]Plaintiff sues Richard Adams (Deputy Division Director, MDOC), Jason Lewis (Division Deputy Director, MDOC) and Anne Precythe (Director, MDOC). Plaintiff sues defendant Richard Adams in his individual and official capacities, and she sues Anne Precythe and Jason Lewis in their official capacities only. Plaintiff sues Governor Parsons in his official capacity only.

[7]The Court presumes the Correctional Officer was asking if plaintiff wanted to go to Protective Custody.

[8]PREA refers to Prison Rape Elimination Act, 34 U.S.C. § 30301. Plaintiff has attached to her complaint her PREA statement filed on December 17, 2021, relative to the alleged incident.

"but instead changed [her] mind, and she went back to again try to file a PREA report with Officer Coleman." When she told Officer Coleman, the second time that she needed to file a PREA, he told her, "If you keep fucking with me [I'm gonna] put you in the hole." After walking to the dayroom and back, plaintiff then asked Coleman if she could move cells. She was told no. However, Coleman later called plaintiff over to the control center and told plaintiff that she could move to cell 7D-109. *Id.* at 33. She claims that defendant Coleman not only failed to follow PREA Guidelines, but also failed to follow the MDOC Transgender Housing Policy Guidelines. Plaintiff states that she filed an Informal Resolution Request (IRR) on December 30, 2021, relating to defendant Kennon's and Coleman's behavior of ignoring the emergency call button. She filed a second IRR on January 14, 2022, against defendant Coleman for purported retaliation for "prevent[ing] her from filing a PREA complaint and threatening to write [her] up if she continued to bother him." *Id.* at 80-81.

Plaintiff claims she initially had no issues with her new cellmate until the middle of the night on December 17, 2021. At that time, she awoke to her cellmate groping her privates and rubbing her face. That morning, she told Unknown Caseworker, who was performing "Orientation" and playing a PREA video for the inmates, that she had been sexually assaulted by her cellmate. Unknown Lieutenant was dispatched to the Caseworker's Office, where plaintiff was directed to write a PREA Statement. *Id.* at 33-35, 79. Plaintiff was escorted to medical, submitted to a rape exam by an unidentified nurse and was then escorted to a new cell, 7A-117 in the TASC Unit.[9]

Plaintiff alleges that she was in the TASC Unit for a week, where she claims that "she suffered tremendously." *Id.* at 50-51. She asserts that the bunks were "rusted and flaking" in

---

[9]Temporary Administrative Segregation Unit.

TASC, and there were mice in the Unit. Plaintiff asserts that although inmates were given cleaning supplies to clean the TASC Unit, their cleaning time was "short." Plaintiff takes issue with the fact that showers in the TASC Unit were only every three days, and "food was often served cold." Plaintiff also complains that "inmates are not allowed to use razors in level 5 facilities' segregation units," and they are only given haircuts once per month. Last, plaintiff complains that inmates were not allowed make-up while in the TASC Unit.[10] *Id.* at. 52.

After plaintiff was released from the TASC Unit she was assigned to 9D-218 by Unknown Reed. *Id.* at 35. Plaintiff identifies her cellmate as inmate Jinan. Plaintiff claims that inmate Jinan had a sodomy charge, and within a few days, he began groping and slapping plaintiff's buttocks. Plaintiff states that she complained about Jinan's behavior to Unknown Sergeant and an unnamed Housing Unit Officer. She claims that Jinan was neither investigated nor given a conduct violation. *Id.*

Plaintiff apparently blames defendant Heather Coefer, the Warden at ERDCC, as well as defendant Reed, the Bedbroker, for placing her in the cell with defendant Jinan. Plaintiff appears to be asserting that if the Transgender Housing Policy was used, she never would have been placed with this inmate and put into imminent danger. *Id.* at 35-36.

Next plaintiff asserts that defendant Lloyd Russell made verbal sexual harassment statements relative to her gender on or about January 17, 2022. *Id.* at 36-37. She claims that defendant Russell called her a "boy" and a "fag" and told her to "lockdown" repetitively during an argument about whether she had the right to be out of her cell so she could take a shower on her own in accordance with the Transgender Housing Policy. *Id.* at 37-38. He then purportedly

---

[10]Plaintiff alleges that defendants Kennon and Lee refused to allow her to have make-up in Administrative Segregation in February of 2022. [ECF No. 23, pp. 55, 93]. Because of her "diagnosis of gender dysphoria," plaintiff asserts she should be allowed to have make-up in Administrative Segregation, and she believes defendants Lee and Kennon acted in retaliation in refusing to allow her make-up.

threatened to place her in the hole after she told an unidentified Lieutenant about the comments. After plaintiff told on defendant Russell, she was allegedly retaliated against with a cell search where she was charged for torn sheets. *Id.* Plaintiff was assessed $40.00 for damaged property that allegedly belonged to her cellmate. She was also placed in segregation for having a folder of kites that had no sending address. Although plaintiff states that the cell search was done by three unnamed correctional officers, she does not connect the cell search to defendant Russell except by temporal proximity. *Id.*

Plaintiff claims that on or about February 1, 2022, she notified Correctional Officer Lee that her toilet was flooding in her cell. *Id.* at 54-56, 88-89. Plaintiff states that Lee left her in her cell "full of feces and urine water." However, plaintiff does not indicate how long it took to have the cell cleaned.

### 2.  ACC Claims for Relief

Plaintiff alleges that she arrived at Algoa Correctional Center (ACC) in March of 2022. *Id.* at 38. She claims, in a conclusory manner, that she "encountered sexual harassment from staff members, as well as experienced sexual misconduct." She states that she was assigned to disciplinary segregation May 4, 2022, after she was caught distributing her prescription medication. *Id*. at pp. 38-39.

Plaintiff claims that while she was in disciplinary segregation, "multiple officers were committing acts of voyeurism." Plaintiff accuses defendants Unknown Snell, Unknown Tarrant, Unknown Hollingsworth, Unknown Adrian, and Unknown Purvis of violating her rights, as well as several Missouri Department of Corrections Policies. She asserts that these defendants would watch her longer than five seconds when she was coming out of the shower and would fail to announce themselves before entering the shower. *Id*. at 39. Plaintiff filed an IRR relating to her

complaints on June 6, 2022, as well as a grievance on June 30, 2022. *Id*. at 95. Plaintiff's grievance appeal was filed on July 18, 2022. *Id.* at 94-99. She states that during the time she was in the Administrative Segregation Unit at ACC, Unknown Purvis sexually harassed her by asking her if her breasts were real. *Id*. at 39.

Plaintiff claims that she tried to file a PREA complaint regarding defendants' behavior, but she was allegedly denied the ability to file the PREA complaint by defendants Unknown Dean, Unknown Schofield, and Unknown Snell.

### 3.  PCC Claims for Relief

Plaintiff alleges that she was transferred to PCC in July of 2022. [ECF No. 23, p. 40]. She states that upon transfer to PCC she was assigned to the Administrative Segregation Unit for thirty (30) days by defendant Brian Davis and defendant Kevin Eckhoff. She asserts that although "no third member was present" for the Administrative Segregation Hearing held on July 26, 2022, defendant Daniel Adams "signed off" on the Classification Hearing form. *Id.*

Plaintiff states that a second hearing was held on August 23, 2022, and at that time defendants Samantha Kelley, Brian Davis and Kevin Eckhoff released her to general population with a responsibility to complete an "assigned program" within thirty (30) days. However, plaintiff was resubmitted to Administrative Segregation on September 8, 2022, for purportedly refusing to submit to wrist restraints, which plaintiff claims resulted in an excessive use of force by defendant Unknown Rulo. *Id.* at 41-42.

Plaintiff claims that defendant Rulo told him to "cuff up," and he asked her why. She states that Rulo immediately maced her. After being maced in her left eye, plaintiff asked Rulo why she had maced her. Plaintiff claims Rulo maced her right eye at that time, and then another officer

assisted defendant Rulo in cuffing plaintiff and escorting plaintiff to medical and then to the Administrative Segregation Unit, Housing Unit 2. *Id.*

Plaintiff asserts that she was sitting on a restraint bench in Housing Unit 2 when she was informed she would have to submit to a strip search by two male officers. *Id.* at 42-43. She claims that she refused to be searched and told the supervisors that it was against policy unless there were exigent circumstances. Nonetheless, defendants Warbl and Arnold cut her clothing off and searched her while she was in wrist restraints within cell 26 with an open cell door. Plaintiff filed a PREA complaint on both officers. *Id.*

Plaintiff states that approximately two weeks later, defendant Daniel Adams came to her cell and told him to write on a PREA Statement: "The Lieutenants I chose didn't sexually harass [me] or violate any DOC policy." She refused to write the statement and Adams walked away from plaintiff's cell. *Id*. at 43-44.

On September 23, 2022, plaintiff had an Administrative Segregation Hearing in front of Brian Davis, Samantha Kelley and Kevin Eckhoff relating to the conduct violation she received for her failure to submit to wrist restraints on September 8, 2022. *Id.* at 102. Plaintiff complains that defendant Philly failed to provide her written notice of the alleged violation, and she alleges that defendant Eckhoff violated her rights when he denied her request to use video evidence at the hearing. *Id*. at 44. Plaintiff was found guilty of the conduct violation, and it was determined that plaintiff should maintain a double cell in Administrative Segregation, participate in the Phoenix Program and remain conduct violation free to return to general population. *Id*. at 102].

On October 18, 2022, plaintiff states that she had a Classification Review Hearing in front of Brian Davis, Samantha Kelley, and Daniel Adams. *Id*. at 103. She claims that Davis told her that he believed that her behavior needed monitoring so he would "vote on sixty days." Adams

purportedly agreed with Davis. However, Kelley allegedly stated that plaintiff's "7.2 shouldn't [have] been dropped to a 10.3." As such, Kelley indicated plaintiff should be held in the Administrative Segregation Unit an additional ninety (90) days. Plaintiff claims defendants keeping her in the Administrative Segregation Unit an additional ninety (90) days was a violation of her due process rights. The Classification Hearing Form states:

> Offender Howell, Alexander #1367452 is referred to Administrative Segregation on 09/23/2022 due to receiving CDV #10.3 (PCC22-2198) on 09/08/2022. Offender Howell was found guilty when he refused wrist restraints resulting in the use of OC pepper spray, then during escort he rubbed his face on a female staff member['s] chest area. Offender Howell failed his Ad-Seg release plan received on 8/23/2022 stating he would remain CDV free for 60 days. Offender Howell has received 1 violations [sic] since being placed on TASC (pending). This is the offender['s] initial hearing on 09/23/2022.

*Id*. at 103.

Plaintiff states that in late October of 2022, she tampered with a security device and was placed on limited property status. *Id*. at 44. She states that as part of her punishment, she was required to be strip searched, and the strip search was conducted by Hayden Dean and Nathan Warbl. Plaintiff attempted to file a PREA complaint for cross-gender strip search after requesting forms from two officers on the night of November 19, 2022, but she was unable to do so when both Officer Dettma and Officer Brown (male) refused to provide her with the forms. *Id*. at 44-45. The next morning plaintiff stopped defendant Gelastyk and attempted to file the PREA complaint, and she was again refused. *Id.*

Plaintiff complains that she showed defendant Carver that her cell, 2B-26 lacked a sprinkler head, on or about September 18, 2022. She told Carver that she believed it to be a safety issue, and Carver told her that if inmates "popped sprinklers" to flood the cells, plumbers simply cap off the sprinkler. Plaintiff alleges that she was held in a cell without a sprinkler head for approximately a month. *Id*. at 46-47.

Plaintiff asserts that on November 20, 2022, she repeatedly pressed the emergency button in her cell but the control officer, a female Officer Brown, failed to respond. Plaintiff does not indicate what the alleged emergency was. *Id*. at 47]. However, she claims that when showers began that evening, she told male Officer Brown that she needed to file a PREA complaint and that the toilet in her cell had clogged and needed to be fixed. She alleges that after her shower, she attempted to walk (cuffed up) to the restraint bench, but the officers tried to "force her" to walk to the wings and she "refused." Plaintiff alleges that the officers "used force," which led to her "swinging" officers "while in restraints." She claims she was dragged into B-Wing out of the sally port, and she "body slammed Zandlo" while Brown "body slammed" her. Plaintiff asserts that Brown had Zandlo yank her hands to the food port, straining her wrists against his on the door. She had injuries to her wrists, as well as a cut on her arm. *Id*. at 48].

 Plaintiff alleges that she informed male Officer Brown on the night of November 23, 2022, that her toilet would not flush and was flooding. She states that Brown told her that he would not call hazardous material crew workers and walked away. *Id*. at 57. Around 4:00 a.m., plaintiff told Correctional Officer Rogers her toilet was flooding, and she walked away from her cell. When plaintiff saw from her cell that the hazardous material crew workers were leaving, she asked them to clean her cell and they yelled back that they had been told not to.

When Officer Brown handed out trays, plaintiff held her food port hostage and asked him why her cell didn't get cleaned. *Id*. at 57-56. Brown allegedly replied that he was told not to have the cell cleaned. Plaintiff alleges defendant Gelastyk arrived at her cell and he told her that he would bring in hazmat. However, when she relinquished her food port, he told Brown to bring a sandbag to the front of her cell and denied hazmat to clean the cell.

On the morning of November 24, 2022, plaintiff told Officer Wise her cell had flooded and Wise notified Lieutenant Arnold who told Wise and Thompson to place more sandbags in front of plaintiff's cell door. *Id*. at 58. Plaintiff claims the day shift supervisor, Joshua Smith, called hazmat to clean the mezzanine floor but not her cell. She alleges that Captain Price then showed up to the control center and left.

At lunch time that day, plaintiff alleges that Rice and Dean walked past her cell and refused to feed her "as a punishment." Plaintiff does not indicate why she believes these two officers were punishing her, although she blames unknown shift commander for ordering the punishment. Plaintiff additionally states that after lunch, Nurse Katie refused to provide her with her medication, allegedly "for the safety and security of the institution." *Id.* at 59.

On the afternoon of November 24, 2022, Sergeant Smith ordered that several cells in Housing Unit 2 be cleaned by the hazmat crew, but he refused to have plaintiff's cell cleaned. *Id.* at 60. Nonetheless, Officer Thompson ordered that plaintiff's cell be cleaned on the morning of November 25, 2022. But when plaintiff was returned to her cell by Officers Dean and Thompson after it was cleaned the toilet still was inoperable. Plaintiff asked to be taken to the inmate restroom "down the walk" to use the toilet, and she was told by Officer Dean that Sergeant Eckhoff said no. *Id*. at 59-60].

On the morning of November 26, 2022, plaintiff requested to Officers Dean and Montgomery that he be able to move cells due to her inoperable toilet. Montgomery told plaintiff that an unknown sergeant said the only way plaintiff would be able to move cells was if he was suicidal. Dean indicated the sergeant would be down to speak to her, but no one came to her cell. Plaintiff again took her food port hostage until her cell was cleaned, and when she was placed back

into her clean cell, the toilet was still inoperable. *Id.* at 61. Plaintiff was finally moved to a new

cell on November 27, 2022, until her toilet could be fixed. *Id.*

Plaintiff brings three separate claims that appear unrelated from December of 2022 in PCC.

She asserts that Sergeant Joshua Smith violated the MDOC regulations because he smoked an

electronic cigarette while on duty at PCC on or about December 2, 2022. *Id.* at. 67. She additionally

claims that Lieutenant Unknown Fox and Unknown Muse conducted a cross-gender pat search on

plaintiff on or about December 2, 2022, in violation of the MDOC policy. *Id.* at 68-69. Last,

plaintiff states that on December 3, 2022, Lieutenant Unknown Carver made an "unprofessional

shower announcement" in violation of the MDOC policy. *Id.* at 70.

### 4.  Claims Against MDOC Directors and Governor Parsons

Plaintiff states in a conclusory manner that defendant Anne Precythe, as Director of the

MDOC, is responsible for making policies to protect inmates and fund training for correctional

officers at the MDOC relating to sexual abuse of inmates. She asserts that there is not enough

training relating to sexual abuse of inmates as to correctional officers at the MDOC. *Id.* at 62.

Plaintiff also claims that both Anne Precythe and Governor Parsons need to increase the

amount given to indigent inmates each month for inmates to afford health services not available to

them such as bi-focal glasses. *Id.* at 62-64.

Additionally, plaintiff seeks a change in policy to allow inmates on protective custody to

use razors. *Id.* at 63.

Last, plaintiff asserts that inmates are not allowed to use their tablets while in the TASC

Unit at ERDCC and PCC. He complains that the guidelines for use of the tablets, which include a

phone application, are used as a "privilege not as a right." *Id.* at 66].

Plaintiff seeks compensatory and punitive damages in this action.

14

**Discussion**

**A.  Plaintiff's Pleading Practices Violate the Joinder Rules**

As set forth above, plaintiff has filed a one-hundred-six (106) page second amended complaint in this action against four (44) defendants in twenty-one (21) separate counts for relief. Plaintiff's allegations concern events stemming from three separate MDOC institutions and span across a two-year time-period. Such pleading practices are not allowed. *See* Fed.R.Civ.P. 18 and 20.

The Court finds that plaintiff's complaint does not comply with the Federal Rules of Civil Procedure. Plaintiff cannot assert in a single lawsuit, claims against different defendants that are related to events arising out of different occurrences or transactions. Rule 20(a)(2) of the Federal Rules of Civil Procedure governs joinder of defendants, and provides:

> Persons ... may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

In other words, "Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).  "Unrelated claims against different defendants belong in different suits, ... [in part] to ensure that prisoners pay the required filing fees - for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees." *Id.*

Plaintiff may, however, name a single defendant, and assert as many claims as she has against him or her.  Rule 18(a) of the Federal Rules of Civil Procedure governs joinder of claims, and provides:

A party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party.

**B.  Plaintiff Will Be Required to File a Third Amended Complaint**

Because plaintiff is proceeding pro se, the Court will allow her to file a third amended complaint on a court-provided form. Plaintiff is advised that the filing of a third amended **complaint completely replaces the original complaint and all supplements,** and so it must include all claims plaintiff wishes to bring.  *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005) ("It is well-established that an amended complaint supersedes an original complaint and renders the original complaint without legal effect"). Any claims from the original complaint or any supplements that are not included in the third amended complaint will be deemed abandoned and will not be considered. *Id*. Plaintiff must **type or neatly print** the third amended complaint on the Court-provided prisoner civil rights complaint form, and the third amended complaint must comply with the Federal Rules of Civil Procedure. *See* E.D. Mo. L.R. 2.06(A).

The Federal Rules of Civil Procedure require litigants to formulate their pleadings in an organized and comprehensible manner. Even self-represented litigants are obligated to abide by the Federal Rules of Civil Procedure and to plead specific facts as to each named defendant. *See U.S. v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994). Plaintiff is required to set out her alleged claims in a simple, concise, and direct manner, and also the facts supporting her claims as to each named defendant. *See* Fed. R. Civ. P. 8(a)(2) (complaint should contain short and plain statement of claims); 8(d)(1) (each claim shall be simple, concise, and direct); 10(b) (parties are to separate their claims within their pleadings and the contents of which shall be limited as far as practicable to a single set of circumstances). Plaintiff should fill out the complaint form in its entirety.

In the "Caption" section of the complaint form, plaintiff must state the first and last name, to the extent she knows it, of the defendant or defendants she wants to sue. *See* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties"). If there is not enough room in the caption, plaintiff may add additional sheets of paper. However, all the defendants must be clearly listed. Plaintiff should also indicate whether she intends to sue each defendant in his or her individual capacity, official capacity, or both. Plaintiff should avoid naming anyone as a defendant unless that person is directly related to her claim(s).

In the "Statement of Claim" section, plaintiff should begin by writing the first defendant's name. In separate, numbered paragraphs under that name, plaintiff should set forth the specific factual allegations supporting his claim or claims against that defendant, as well as the constitutional right or rights that defendant violated. **Plaintiff should only include claims that arise out of the same transaction or occurrence, or simply put, claims that are related to each other.** *See* Fed. R. Civ. P. 20(a)(2). Alternatively, plaintiff may choose a single defendant and set forth as many claims as she has against that defendant. *See* Fed. R. Civ. P. 18(a). The Court emphasizes that the "Statement of Claim" requires more than "labels and conclusions or a formulaic recitation of the elements of a cause of action." *See Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017). If plaintiff is suing more than one defendant, she should proceed in the same manner with each one, separately writing each individual defendant's name and, under that name, in numbered paragraphs, the allegations specific to that particular defendant and the right(s) that defendant violated.

If plaintiff fails to file an amended complaint on a Court-provided form within twenty-one (21) days in accordance with the instructions set forth herein, the Court may dismiss this action without prejudice and without further notice to plaintiff.

### C. Plaintiff's Claims in the Third Amended Complaint Must Include Actionable Claims

Plaintiff's failure to make specific and actionable allegations against the defendants in the third amended complaint will result in that defendant's dismissal from this case.

For example, if plaintiff is suing a defendant in an individual capacity, she is required to allege facts demonstrating the personal responsibility of the defendant for harming him. *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (stating that § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights"). It is not enough for plaintiff to refer to a group of defendants and make general allegations against them. Instead, plaintiff must explain the role of each defendant so that each defendant will have notice of what he or she is accused of doing or failing to do. *See Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (stating that the essential function of a complaint "is to give the opposing party fair notice of the nature and basis or grounds for a claim."). One way to do so is to list the defendant in the third amended complaint and then organize all claims against that defendant underneath the defendant's name.

Additionally, it appears that plaintiff attempted to make several "failure to train" claims in her second amended complaint. To the extent plaintiff is alleging defendants are liable solely because they held administrative or supervisory positions, such claims are subject to dismissal. *See Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (respondeat superior theory inapplicable in § 1983 cases). Supervisors cannot be held vicariously liable under § 1983 for the actions of a subordinate. *See Iqbal*, 556 U.S. at 676. To state a claim, the plaintiff must plead that the supervising official, through his or her own individual actions, has violated the Constitution. *Id.* Where, as here, the alleged constitutional violation requires proof of an impermissible motive, the third amended

complaint must allege adequately that the defendant acted with such impermissible purpose, not merely that he or she knew of a subordinate's motive. *Id.*

Furthermore, in the second amended complaint plaintiff alleges violations of internal rules and regulations at the MDOC by defendants. In fact, approximately thirteen (13) of the counts listed in plaintiff's second amended complaint alleged such violations. These allegations simply do not rise to the level of a constitutional deprivation and are legally insufficient to establish a denial of rights secured under the Constitution or laws of the United States. To state a cognizable claim under § 1983, a plaintiff must allege that the conduct of a defendant acting under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983; *Hamilton v. Schriro*, 74 F.3d 1545, 1549 (8th Cir. 1996). There is no federally protected interest in having state officers follow state law or prison officials follow prison regulations. *See Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003); *see also Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997) (failure to follow prison policy is not basis for § 1983 liability); *Bagley v. Rogerson,* 5 F.3d 325 (8th Cir. 1993) allegation of state law violation, statutory or decisional, does not state a claim under federal Constitution or § 1983).

To the extent plaintiff is asserting that she has been subject to verbal harassment, her claims, as stated in her second amended complaint, also fail to reach a constitutional violation. "Generally, mere verbal threats made by a state-actor do not constitute a § 1983 claim." *Hopson v. Fredericksen*, 961 F.2d 1374, 1378 (8th Cir. 1992). *See also McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) ("Verbal threats and name calling usually are not actionable under § 1983"). In other words, fear or emotional injury resulting "solely from verbal harassment or idle threats is generally not sufficient to constitute an invasion of an identified liberty interest." *King v. Olmsted Cty.*, 117 F.3d 1065, 1067 (8th Cir. 1997).

19

Also, although it is not entirely clear whom plaintiff believes acted in a conspiracy, the Court cannot say that she has plead enough in her second amended complaint to state such a claim at this time. "To prove a § 1983 conspiracy claim against a particular defendant, the plaintiff must show: that the defendant conspired with others to deprive him or her of a constitutional right; that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and that the overt act injured the plaintiff." *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999). *See also Burbridge v. City of St. Louis, Missouri*, 2 F.4th 774, 782-83 (8th Cir. 2021) (explaining that "[t]o prevail on a [42 U.S.C.] § 1983 conspiracy claim, [the plaintiff] must show that (1) the defendants agreed to deprive him of his constitutional rights; (2) at least one of the alleged coconspirators engaged in an overt act in furtherance of the conspiracy; and (3) [the plaintiff] was injured by the overt act"). Additionally, to prevail, the plaintiff is required to prove the deprivation of a constitutional right or privilege. *Riddle v. Riepe*, 866 F.3d 943, 948 (8th Cir. 2017*). See also Draper v. City of Festus, Mo.,* 782 F.3d 948, 953 (8th Cir. 2015). "Absent a constitutional violation, there is no actionable conspiracy claim." *In re Kemp*, 894 F.3d 900, 910 (8th Cir. 2018).

Similarly, although a correctional officer can be held liable for failing to intervene in another officer's constitutional violation, *see Putman v. Gerloff*, 639 F.2d 415, 423 (8th Cir. 1981), it appears that plaintiff is attempting to utilize "failure to intervene" and "failure to protect" claims for "after the fact" behavior by prison officials.[11] Such allegations do not state a claim for relief.

---

[11]In analyzing a failure to protect claim, the Court first looks to see whether a substantial risk of harm exists. To decide this factor the Court determines: (1) whether plaintiff had been threatened by the assaulting inmate; (2) whether the assaulting inmate was known to be violent or volatile; (3) whether plaintiff and the assaulting inmate had previously argued or fought, been cellmates, or even knew each other; and (4) whether either plaintiff or the assaulting inmate had recently been in protective custody or in a restrictive status such as administrative segregation. *See Vandevender v. Sass*, 970 F.3d 972, 976 (8th Cir. 2020). Ultimately, a plaintiff must show that he faced a "pervasive risk of harm." *Falls v. Nesbitt*, 966 F.2d 375, 378 (8th Cir. 1992). Ordinarily, a "pervasive risk of harm" cannot be "shown by pointing to a single incident or isolated incidents, but it may be established by much less than proof of a reign of violence and terror in the particular institution." *Andrews v. Siegel,* 929 F.2d 1326, 1330 (8th Cir. 1991). The second requirement

"A prison official acts with deliberate indifference to an inmate's safety when the official is present at the time of an assault and fails to intervene or otherwise act to end the assault." *Williams v. Mueller*, 13 F.3d 1214, 1216 (8th Cir. 1994).

As to plaintiff's claims for intentional infliction of emotional distress in her second amended complaint, those claims also fail to state a claim for relief as currently plead. The necessary elements for a claim for intentional infliction of emotional distress are (1) the defendant must act intentionally or recklessly; (2) the defendant's conduct must be extreme or outrageous; and (3) the conduct must be the cause (4) of extreme emotional distress. *Thomas v. Special Olympics Mo., Inc.,* 31 S.W.3d 442, 446 (Mo. App. W.D. 2000).  The mental injury must be medically diagnosable and significant. *Fetick v. Am.  Cyanamid Co.,* 38 S.W.3d 415, 419 (Mo. banc 2001). Plaintiff has not alleged that she experienced medically diagnosable emotional distress because of defendants' actions.

Last, plaintiff's claims in her second amended complaint relating to her placement in Administrative Segregation, TASC and/or Protective Custody, as written, fail to establish a violation of the Due Process Clause. The Eighth Circuit has stated that an assignment to disciplinary or administrative segregation is not, in and of itself, an atypical and significant hardship. *See Portley-El v. Brill*, 288 F.3d 1063, 1065 (8th Cir. 2002) (stating that Eighth Circuit has "consistently held that administrative and disciplinary segregation are not atypical and significant hardships under *Sandin v. Conner,* 515 U.S. 472, 484 (1995).*"); Kennedy v.*

---

of a failure to protect claim is that the defendant acted or failed to act with deliberate indifference to the plaintiff's safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Negligence is insufficient to demonstrate deliberate indifference. *Jackson v. Everett*, 140 F.3d 1149, 1152 (8th Cir. 1998). Rather, for a defendant to have acted with deliberate indifference, "he must have recklessly disregarded a known, excessive risk of serious harm to" a plaintiff's safety. *Pagels v. Morrison*, 335 F.3d 736, 740 (8th Cir. 2003). That is, a plaintiff must demonstrate that the defendant "actually intended to deprive him of some right," or that the defendant "acted with reckless disregard of his right to be free from violent attacks by fellow inmates." *Miller v. Solem*, 728 F.2d 1020, 1024 (8th Cir. 1984).

*Blankenship*, 100 F.3d 640, 642 (8th Cir. 1996) (stating that plaintiff's "demotion from administrative segregation to punitive isolation is not the sort of deprivation that qualifies as atypical and significant"); and *Wycoff v. Nichols*, 94 F.3d 1187, 1190 (8th Cir. 1996) (stating that plaintiff "has no liberty interest in avoiding administrative segregation unless the conditions of his confinement present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest"). This is so even if the demotion to segregation is without cause. *Phillips v. Norris,* 320 F.3d 844, 847 (8th Cir. 2003). To state a violation of the Due Process Clause for placement in Administrative Segregation, plaintiff must show that she was consistently and significantly deprived of something different than found in general population.

### Motion for Appointment of Counsel

Before the Court is plaintiff's motion for appointment of counsel. After considering the motion and the pleadings, the motion will be denied without prejudice.

There is no constitutional or statutory right to appointed counsel in civil cases. *Nelson v. Redfield Lithograph Printing*, 728 F.2d 1003, 1004 (8th Cir. 1984). In determining whether to appoint counsel, the Court considers several factors, including (1) whether the plaintiff has presented non-frivolous allegations supporting his or her prayer for relief; (2) whether the plaintiff will substantially benefit from the appointment of counsel; (3) whether there is a need to further investigate and present the facts related to the plaintiff's allegations; and (4) whether the factual and legal issues presented by the action are complex. *See Johnson v. Williams*, 788 F.2d 1319, 1322-23 (8th Cir. 1986); *Nelson*, 728 F.2d at 1005.

Although plaintiff's assertions regarding sexual assault by another inmate are egregious, she has demonstrated, at this point, that she can adequately present her claims to the Court.

Additionally, neither the factual nor the legal issues in this case are complex. Thus, plaintiff's motion for appointment of counsel will be denied at this time.

Accordingly,

**IT IS HEREBY ORDERED** that, plaintiff's motion to proceed in forma pauperis [ECF No. 24] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that, plaintiff shall submit an amended complaint, in accordance with the instructions set forth in this Memorandum and Order, no later than twenty-one (21) days from the date of this Memorandum and Order.

**IT IS FURTHER ORDERED** that the Clerk of Court shall mail to plaintiff a blank form for the filing of a prisoner civil rights complaint. Plaintiff may request additional forms from the Clerk, as needed.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel [ECF No. 25] is **DENIED at this time**.

**IT IS FURTHER ORDERED** that plaintiff's failure to timely comply with this Order shall result in the dismissal of this action, without prejudice and without further notice.

Dated this 7th day of March, 2023.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE